**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 4, 2002**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                               No. 117041

REGINALD JOHN LETT,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

We granted leave to appeal in this case to consider whether defendant is entitled to the reversal of his convictions on the ground that he was retried, following the declaration of a mistrial, in violation of his constitutional right to be free from double jeopardy. We conclude that the trial court did not abuse its discretion in declaring a mistrial and in dismissing the jury where the jury foreperson indicated that the jury members were not going to reach a unanimous verdict and defendant did not object to the

declaration of mistrial. We additionally conclude that defendant's retrial, following the proper declaration of a mistrial, did not violate the constitutional protection against successive prosecutions. Accordingly, we reverse the decision of the Court of Appeals and remand this matter to that Court for consideration of the additional issue that was raised by defendant, but not decided.

I. FACTUAL AND PROCEDURAL BACKGROUND

On August 29, 1996, Adesoji Latona, a taxi driver, was fatally shot at a Detroit liquor store. Latona was apparently confronted by a group of men, including defendant, as he entered the liquor store. One of the men, Charles Jones, accused Latona of throwing him out of Latona's cab, and an argument ensued inside the store. Latona's girlfriend testified that she saw defendant draw a gun, after which she heard two gunshots. In a statement given to police following the incident, defendant admitted that he was at the party store at the time of the shooting and that he and Jones had fought with Latona inside the store. Defendant further stated that he had retrieved a gun from another friend in the parking lot, and that he went back inside and fired the gun into the air before running back outside. Latona died from two gunshot wounds, one to the head and one to the chest.

Defendant was charged with first-degree murder, MCL 750.316, and possession of a firearm during the commission of

2

a felony (felony-firearm), MCL 750.227b. Defendant's first trial, which took place in June 1997 before Detroit Recorder's Court Judge Helen E. Brown, consumed–from jury selection to closing statements and jury instructions–a total of eight and one-half hours spread out over six days. After approximately four or five hours of deliberation,[1] the jury sent Judge Brown a note which stated: "What if we can't agree? [M]istrial? [R]etrial? [W]hat?"[2] Upon receiving the note, Judge Brown called the jury into the courtroom and, with the assistant prosecuting attorney and defense counsel present,[3] engaged in the following exchange with the jury foreperson:

> *The Court*: I received your note asking me what if you can't agree? And I have to conclude from that that that is your situation at this time. So, I'd like to ask the foreperson to identify themselves [sic], please?
>
> *Foreperson*: [Identified herself.]
>
> *The Court*: Okay, thank you. All right. I need to ask you if the jury is deadlocked; in other words, is there a disagreement as to the verdict?

---

[1]The jury deliberated from approximately 3:24 p.m. to 4:00 p.m. on June 12, 1997, and ended its deliberations at 12:45 p.m. on June 13, 1997.

[2]During its deliberations, the jury sent out seven notes. Most of the notes were routine requests for evidence, instructions, and breaks. However, one note, sent out early on the second day of deliberations, stated that the jurors had "a concern about our voice levels disturbing any other proceedings that might be going on," indicating that perhaps the deliberations had already become somewhat acrimonious.

[3]We are unable to discern from the trial transcript whether any off-the-record discussion took place between Judge Brown and counsel before the jury was called into the courtroom concerning any proposed response to the jury's note.

3

*Foreperson*: Yes, there is.

*The Court*: All right.  Do you believe that it is hopelessly deadlocked?

*Foreperson*: The majority of us don't believe that . . .

*The Court*: (Interposing) Don't say what you're going to say, okay?

*Foreperson*: Oh, I'm sorry.

*The Court*: I don't want to know what your verdict might be, or how the split is, or any of that.  Thank you.  Okay?  Are you going to reach a unanimous verdict, or not?

*Foreperson*: (No response)

*The Court*: Yes or no?

*Foreperson*: No, Judge.

*The Court*: All right.  I hereby declare a mistrial.  The jury is dismissed.

In November 1997, defendant was retried before a different judge on charges of first-degree murder and felony-firearm.  The second jury returned a verdict of guilty of the lesser offense of second-degree murder, MCL 750.317, and guilty as charged of felony-firearm.[4]

In his appeal before the Court of Appeals, defendant, through appellate counsel, raised for the first time the claim that he was retried in violation of the Double Jeopardy Clause of the federal and state constitutions.  Defendant argued that Judge Brown had sua sponte terminated the first trial without

---

[4]The second jury deliberated for approximately three hours and fifteen minutes before delivering its verdict.

4

manifest necessity to do so and without his consent, and that retrial therefore violated his constitutional right to be free from successive prosecutions.

The Court of Appeals panel agreed and reversed defendant's convictions. The panel opined that defendant had not consented to the declaration of the mistrial, citing *People v Johnson*, 396 Mich 424, 432; 240 NW2d 729 (1976), repudiated on other grounds in *People v New*, 427 Mich 482; 398 NW2d 358 (1986), for the proposition that a defendant's mere silence or failure to object to the jury's discharge is not "consent." The panel, turning to defendant's claim that the declaration of a mistrial was not manifestly necessary, concluded that the trial court's decision to discharge the jury was not reasonable because it had failed to consider alternatives or to make findings on the record:

> Recognizing that the doctrine of double jeopardy does not preclude retrial after the discharge of a jury because of inability to agree, our Supreme Court has stated that the inquiry "turns upon [the] determination whether the trial judge was entitled to conclude that the jury in fact was unable to [agree]." *People v Duncan*, 373 Mich 650, 660-661; 130 NW2d 385 (1964). This has led to the accepted rule that a trial court must consider reasonable alternatives before sua sponte declaring a mistrial and the court should make explicit findings, after a hearing on the record, that no reasonable alternative exists. *People v Hicks*, 447 Mich 819, 841 (GRIFFIN, J.), 847 (CAVANAGH, C.J.); 528 NW2d 136 (1994); *People v Benton*, 402 Mich 47, 61; 260 NW2d 77 (1977) (LEVIN, J.); *People v Rutherford*, 208 Mich App 198, 202; 526 NW2d 620 (1994); *People v Little*, 180 Mich App 19, 23-24; 446 NW2d 566 (1989); *People v Dry Land Marina*, 175 Mich App 322, 327; 437 NW2d 391 (1989).

5

In the present case, we must determine whether the trial court reasonably concluded that the jury was deadlocked. Based on the record before us, we are forced to conclude that the court did not reasonably declare a mistrial. The trial court declared a mistrial without a hearing or discussion of any alternatives. No deadlock jury instructions were given much less even considered by the trial court. See CJI2d 3.12. The jury had deliberated only four or five hours in a capital murder case following four days of trial testimony. There was clearly a reasonable alternative in this case, that is, to give the jury a deadlock jury instruction and send it back for further deliberation. See, e.g., *Hicks*, *supra*, pp 843-844; *Benton*, *supra*, pp 61-62; *Rutherford*, *supra*, p 203; *Little*, *supra*, pp 27-30.

Because a reasonable alternative existed in this case, an alternative never given consideration by the trial court, the trial court did not engage in a scrupulous exercise of discretion in sua sponte declaring a mistrial. *Hicks*, *supra*, p 829, citing *United States v Jorn*, 400 US 470, 485; 91 S Ct 547; 27 L Ed 2d 543 (1971). Put another way, it was not manifestly necessary for the trial court to have declared a mistrial given the shortness of the jury's deliberation and the court's failure to give a deadlock jury instruction. In fact, the trial court never even found on the record that the jury was genuinely deadlocked. Given these circumstances, we are compelled to conclude that retrial violated defendant's rights against double jeopardy as guaranteed by the United States and Michigan Constitutions. Therefore, defendant's convictions are reversed. [Slip op, pp 4-5.]

We granted the prosecution's application for leave to appeal.[5]

Because we conclude that manifest necessity existed to support the mistrial declaration, we reverse.

## II. STANDARD OF REVIEW

A constitutional double jeopardy challenge presents a

---

[5] 463 Mich 939 (2000).

question of law that we review de novo. *People v Herron*, 464 Mich 593, 599; 628 NW2d 528 (2001). Necessarily intertwined with the constitutional issue in this case is the threshold issue whether the trial court properly declared a mistrial. The trial judge's decision to declare a mistrial when he considers the jury deadlocked is accorded great deference by a reviewing court. *Arizona v Washington*, 434 US 497, 510; 98 S Ct 824; 54 L Ed 2d 717 (1978).[6] "*At most*, . . . the inquiry . . . turns upon determination whether the trial judge was entitled to conclude that the jury in fact was unable to reach a verdict." *Duncan*, *supra*, 373 Mich 661 (emphasis supplied).

### III. ANALYSIS

#### A. DOUBLE JEOPARDY IMPLICATIONS OF RETRIAL FOLLOWING MISTRIAL

Under both the Double Jeopardy Clause of the Michigan Constitution[7] and its federal counterpart,[8] an accused may not

---

[6]See *Huss v Graves,* 252 F3d 952, 956-957 (CA 8, 2001) (a case involving the sua sponte declaration of a mistrial in a *bench* trial, contrary to both the prosecution's and the defendant's motions for entry of verdict of not guilty by reason of insanity, was "not similar to those [cases] in which a mistrial is declared when a jury is unable to reach a verdict, a situation in which a finding of manifest necessity is *almost always justified*") (emphasis supplied).

[7]Const 1963, art 1, § 15. Our constitution provides no greater protection than does the federal constitution with respect to retrial following a mistrial caused by jury deadlock. *People v Thompson*, 424 Mich 118, 125-129; 379 NW2d 49 (1985).

[8]US Const, Am V, made applicable to the states through the Fourteenth Amendment. *Benton v Maryland*, 395 US 784; 89

be "twice put in jeopardy" for the same offense.  The Double Jeopardy Clause originated from the common-law notion that a person who has been convicted, acquitted, or pardoned should not be retried for the same offense.  See *United States v Scott*, 437 US 82, 87; 98 S Ct 2187; 57 L Ed 2d 65 (1978); *Crist v Bretz*, 437 US 28, 33; 98 S Ct 2156; 57 L Ed 2d 24 (1978).  The constitutional prohibition against multiple prosecutions arises from the concern that the prosecution should not be permitted repeated opportunities to obtain a conviction:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. [*Green v United States*, 355 US 184, 187-188; 78 S Ct 221; 2 L Ed 2d 199 (1957).]

From this fundamental idea, the United States Supreme Court has over the years developed a body of double jeopardy jurisprudence that recognizes, among other related rights,[9] an

---

C St 2056; 23 L Ed 2d 707 (1969).

[9]The Double Jeopardy Clause has often been described, in simple terms, as embodying three separate guarantees: protection against a second prosecution for the same offense following acquittal, protection against a second prosecution for the same offense following conviction, and protection against multiple punishments for the same offense.  See *Ohio v Johnson*, 467 US 493, 497; 104 S Ct 2536; 81 L Ed 2d 425 (1984); *Justices of Boston Municipal Court v Lydon*, 466 US 294, 306-307; 104 S Ct 1805; 80 L Ed 2d 311 (1984); *Herron*,

8

accused's "valued right to have his trial completed by a particular tribunal . . . ." *Wade v Hunter*, 336 US 684, 689; 69 S Ct 834; 93 L Ed 974 (1949); see also *Washington*, *supra*, 434 US 503; *Illinois v Somerville*, 410 US 458, 466; 93 S Ct 1066; 35 L Ed 2d 425 (1973). Jeopardy is said to "attach" when a jury is selected and sworn, see *Somerville*, *supra*, 410 US 467; *Hicks*, *supra*, 447 Mich 827, n 13 (GRIFFIN, J.), and the Double Jeopardy Clause therefore protects an accused's interest in avoiding multiple prosecutions even where no determination of guilt or innocence has been made. See *Scott*, *supra*, 437 US 87-92; *Crist, supra*, 437 US 33-34. It is this interest that is implicated when the trial judge declares a mistrial, thereby putting an end to the proceedings before a verdict is reached. *Scott*, *supra*, 437 US 92; *Crist*, *supra*, 437 US 33-34. However, the general rule permitting the prosecution only one opportunity to obtain a conviction "'must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.'" *Washington*, *supra,* 434 US 505, n 11, quoting *Wade*, *supra,* 336 US 689.

"[I]t is axiomatic that retrial is not automatically barred whenever circumstances compel the discharge of a factfinder before a verdict has been rendered." *Hicks*, *supra*,

---

*supra,* 464 Mich 599; *People v Vincent*, 455 Mich 110, 120, n 5; 565 NW2d 629 (1997). However, as the Court noted in *Crist, supra*, 437 US 32, the "deceptively plain language" of the Double Jeopardy Clause "has given rise to problems both subtle and complex . . . ."

9

447 Mich 827 (GRIFFIN, J.). It is well settled, for instance, that where a defendant requests or consents to a mistrial, retrial is not barred unless the prosecutor has engaged in conduct intended to provoke or "goad" the mistrial request. See *Oregon v Kennedy*, 456 US 667, 675-676; 102 S Ct 2083; 72 L Ed 2d 416 (1982); *United States v Dinitz*, 424 US 600, 608; 96 S Ct 1075; 47 L Ed 2d 267 (1976); *Hicks*, *supra*, 447 Mich 828 (GRIFFIN, J.). Additionally, retrial is always permitted when the mistrial is occasioned by "manifest necessity." *Kennedy, supra,* 456 US 672; *Washington*, *supra,* 434 US 505; *Hicks*, *supra*, 447 Mich 828 (GRIFFIN, J.).

The concept of "manifest necessity" was introduced in *United States v Perez*, 22 US (9 Wheat) 579; 6 L Ed 165 (1824), in which the Court addressed the propriety of the retrial of an accused following the discharge of a deadlocked jury without the accused's consent. Noting that in such a case the accused has not been convicted or acquitted, the Court held that the declaration of a mistrial under these circumstances poses no bar to a future trial. *Id.* at 580. However, the Court indicated that trial courts are to exercise caution in discharging the jury before a verdict is reached:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, *whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity* for the act, or the ends of public justice would otherwise be defeated. *They are to exercise a sound discretion on the subject;*

10

and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests in this, as in other cases, upon the responsibility of the Judges, under their oaths of office. We are aware that there is some diversity of opinion and practice on this subject, in the American Courts; but, after weighing the question with due deliberation, we are of opinion, that such a discharge constitutes no bar to further proceedings, and gives no right of exemption to the prisoner from being again put upon trial. [*Id.* (emphasis supplied).][10]

As noted in *Richardson v United States*, 468 US 317, 323–324; 104 S Ct 3081; 82 L Ed 2d 242 (1984), "[i]t has been established for 160 years, since the opinion of Justice Story in [*Perez*], that a failure of the jury to agree on a verdict was an instance of 'manifest necessity' which permitted a trial judge to terminate the first trial and retry the defendant, because 'the ends of public justice would otherwise

---

[10]Interestingly, in *Crist, supra*, 437 US 34, n 10, the Court questioned whether the *Perez* Court was actually deciding a constitutional question, or was rather "simply settling a problem arising in the administration of federal criminal justice." See also *id.* at 44-45 (Powell, J., dissenting) ("[a]s both Justices Washington and Story believed that the Double Jeopardy Clause embraced only actual acquittal and conviction, they must have viewed *Perez* as involving the independent rule barring needless discharges of the jury"). However, the majority, declining to upset 150 years of settled Fifth Amendment jurisprudence, stated that "to cast such a new light on *Perez* at this late date would be of academic interest only." *Id.* at 34, n 10.

be defeated.'"  See also *Washington*, *supra,* 434 US 509 ("the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict [has been] long considered the classic basis for a proper mistrial"); *Kennedy*, *supra*, 456 US 672 ("the hung jury remains the prototypical example" of a situation meeting the "manifest necessity" standard); *People v Thompson*, 424 Mich 118, 128; 379 NW2d 49 (1985) ("we have consistently held that retrial after a mistrial caused by jury deadlock does not violate the Michigan Constitution or the United States Constitution"); *Duncan*, *supra,* 373 Mich 660, quoting *People v Parker*, 145 Mich 488, 499; 108 NW 999 (1906) (Michigan case law has without exception recognized that "the doctrine of former jeopardy does not preclude retrial after discharge of a jury 'for inability to agree, or for some other overruling necessity'").

Defendant nevertheless contends, and the Court of Appeals agreed, that his retrial constituted a violation of his constitutional right to be free from successive prosecutions because the trial court precipitously declared a mistrial without manifest necessity to do so.  We disagree and hold that the Double Jeopardy Clause did not bar defendant's second trial or convictions.

B.  Manifest Necessity

The Court of Appeals concluded that the trial court abused its discretion in discharging the jury without first

12

examining alternatives, such as providing a "hung jury" instruction, and without conducting a hearing or making findings on the record. We hold that, because the record provides sufficient justification for the mistrial declaration, the trial court did not abuse its discretion in dismissing the jury.

The constitutional concept of manifest necessity does not require that a mistrial be "*necessary*" in the strictest sense of the word. Rather, what is required is a "high degree" of necessity. *Washington*, 434 US 506-507. Furthermore, differing levels of appellate scrutiny are applied to the trial court's decision to declare a mistrial, depending on the nature of the circumstances leading to the mistrial declaration. At one end of the spectrum is a mistrial declared on the basis of the unavailability of crucial prosecution evidence, or when the prosecution is using its resources to achieve an impermissible tactical advantage over the accused. The trial judge's declaration of a mistrial under those types of circumstances will be strictly scrutinized. *Id.* at 508. At the other end of the spectrum is the mistrial premised on jury deadlock, "long considered the classic basis for a proper mistrial." *Id.* at 509.[11] The trial

---

[11]See also *Duncan*, *supra,* 373 Mich 660:

> Defendant contends on appeal that discharge of the jury . . . bars his retrial because he has previously been put in jeopardy of conviction of such charges. . . . In none of the cases

judge's decision to discharge a jury when he concludes that it

> [defendant has] cited is it even suggested that discharge of a jury, without the defendant's consent, for its inability to agree upon a verdict thereby bars subsequent retrial.

When a mistrial is declared on the basis of juror deadlock, double jeopardy interests will rarely, if ever, be implicated, because jeopardy "continues" following the mistrial declaration. See *Richardson*, *supra*, 468 US 325-326, reaffirming that "a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy" to which the defendant was subjected. See also *People v Mehall*, 454 Mich 1, 4-5; 557 NW2d 110 (1997):

> One circumstance that constitutes a manifest necessity is the jury's failure to reach a unanimous verdict. When this occurs, and the trial court declares a mistrial, a retrial is not precluded *because the original jeopardy has not been terminated*, i.e., there has not been an assessment of the sufficiency of the prosecution's proofs. [Emphasis supplied.]

We were recently guided by this principle in *Herron*, *supra*, in which we determined that the defendant could be tried in a second trial for second-degree murder after the first jury arrived at a verdict with respect to one charge, but was unable to reach a verdict with respect to the murder charge:

> Where criminal proceedings against an accused have not run their full course, the Double Jeopardy Clause does not bar a second trial. . . . Thus, because the prosecutor's retrial of defendant on the charge of second-degree murder was the result of a hung jury, we conclude that there was no violation of double jeopardy principles aimed at multiple prosecutions. [*Id*. at 602-603 (citations omitted).]

See also, e.g., *United States v Streett*, ___ F Supp ___; 2001 WL 420367 (WD VA, 2001) (defendants' argument that retrial after a mistrial declared because of jury deadlock was constitutionally impermissible is without merit, both because of the "broad discretion" enjoyed by the trial court in making this determination and because "the Supreme Court has expressly held that the failure of a jury to reach a verdict is 'not an event which terminates jeopardy'").

is deadlocked is entitled to great deference. *Id.* at 510.

As the United States Supreme Court has opined:

> [T]here are especially compelling reasons for allowing the trial judge to exercise broad discretion in deciding whether or not "manifest necessity" justifies a discharge of the jury. On the one hand, if he discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his "valued right to have his trial completed by a particular tribunal." But if he fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors. If retrial of the defendant were barred whenever an appellate court views the "necessity" for a mistrial differently from the trial judge, there would be a danger that the latter, cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent deadlock. Such a rule would frustrate the public interest in just judgments. The trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court. [*Id.* at 509-510.]

Therefore, the mere fact that the reviewing court would not have declared a mistrial under the circumstances of this case does not mean that retrial is necessarily barred. The issue is not whether this Court would have found manifest necessity, but whether the trial court *abused its discretion* in finding manifest necessity.[12]

---

[12]As noted, a trial court's decision to declare a mistrial on the basis of juror deadlock is entitled to a high degree of deference. It is well established that "[a]n abuse of discretion involves far more than a difference in judicial opinion." *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 227; 600 NW2d 638 (1999); *Spalding v Spalding*, 355 Mich 382, 384; 94 NW2d 810 (1959). Rather, "such abuse occurs only when the result is 'so palpably and grossly violative of

15

Consistent with the special respect accorded to the court's declaration of a mistrial on the basis of jury deadlock, this Court has never required an examination of alternatives before a trial judge declares a mistrial on the basis of jury deadlock;[13] nor have we ever required that the judge conduct a "manifest necessity" hearing or make findings on the record. In fact, we long ago stated that, "[a]t most, . . . the inquiry in [such a case] turns upon determination *whether the trial judge was entitled to conclude that the jury in fact was unable to reach a verdict*." *Duncan*, *supra*, 373

---

fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.'" *Alken-Ziegler, supra* at 227, quoting *Spalding, supra* at 384-385. We simply cannot conclude that the trial court abused its discretion in such a manner here.

[13]We acknowledge that we have required the examination of alternatives in *other* mistrial contexts. See *Hicks*, *supra*, 447 Mich 843-845 (GRIFFIN, J.) (declaration of a mistrial after the trial judge recused herself over the defendant's objection); *Benton*, *supra*, 402 Mich 47 (sua sponte declaration of a mistrial on the basis of prosecutorial error). We need not determine whether the failure to consider alternatives to mistrial in circumstances other than jury deadlock is constitutionally impermissible. We note, however, that in support of the proposition that consideration of alternative measures is constitutionally required in these other contexts, this Court in *Benton* cited two federal circuit court opinions that were subsequently overturned by the United States Supreme Court: *Arizona v Washington*, 546 F2d 829, 832 (CA 9, 1976), was reversed on appeal to the Supreme Court at 434 US 497 (in which the Court rejected the notion that the trial judge was required to consider or utilize alternatives before declaring a mistrial), and *United States v Grasso*, 552 F2d 46, 49-50 (CA 2, 1977), vacated by the Supreme Court at 438 US 901; 98 S Ct 3117; 57 L Ed 2d 1144 (1978) (directing the Court of Appeals to reconsider in light of *Washington*, *supra*). See *Benton*, *supra*, 402 Mich 57, n 11, 61, n 19.

16

Mich 661 (emphasis supplied). Moreover, the United States Supreme Court has expressly indicated that the failure of a trial judge to examine alternatives or to make findings on the record before declaring a mistrial does not render the mistrial declaration improper. Instead, where the basis for a mistrial order is adequately disclosed by the record, the ruling will be upheld. *Washington, supra*, 434 US 515-517.[14]

Although we acknowledge that the "deadlocked jury" instruction, CJI2d 3.12, might have appropriately been given to the jury in this case, the fact remains that defendant did not request that this instruction be given.[15] We are not aware

_____

[14]Justice Marshall, joined by Justice Brennan, dissented: "What the 'manifest necessity' doctrine . . . require[s], in my view, is that the record make clear either that there were no meaningful and practical alternatives to a mistrial, or that the trial court scrupulously considered available alternatives and found all wanting but a termination of the proceedings." *Id.* at 525 (Marshall, J.). The Court of Appeals panel's view in the instant case, although apparently consistent with the view of Justices Marshall and Brennan, was specifically rejected by the *Washington* majority.

[15]Further, it appears from the record that defendant did not object to the trial court's decision to discharge the jury. The prosecution contends that under these circumstances defendant "implicitly consented" to the declaration of mistrial, thus rendering it unnecessary to determine whether the declaration was supported by manifest necessity. See *Hicks*, *supra*, 447 Mich 858, n 3 (Boyle, J., dissenting) ("[t]he Supreme Court appears to use 'consent' . . . to refer to mistrials not requested by the defendant, *but only acquiesced to*") (emphasis supplied); see also *United States v Aguilar-Aranceta*, 957 F2d 18, 22 (CA 1, 1992); *United States v Beckerman*, 516 F2d 905, 909 (CA 2, 1975); *United States v Phillips*, 431 F2d 949, 950 (CA 3, 1970); *United States v Ham*, 58 F3d 78, 83-84 (CA 4, 1995); *United States v Palmer*, 122 F3d 215, 218 (CA 5, 1997); *United States v Gantley*, 172 F3d 422, 428-429 (CA 6, 1999); *Camden v Crawford Co Circuit Court,* 892 F2d 610, 614-618 (CA 7, 1989); *United States v Gaytan*, 115 F3d

of any requirement that a trial court sua sponte instruct a deadlocked jury to resume deliberations. Moreover, we remain cognizant of the significant risk of coercion that would necessarily accompany a requirement that a deadlocked jury be forced to engage in protracted deliberations. See *Washington*, supra, 434 US 509-510; *People v Hardin*, 421 Mich 296; 365 NW2d 101 (1984).[16]

We conclude that the judge did not abuse her discretion in declaring a mistrial under the circumstances of this case. The jury had deliberated for at least four hours following a relatively short, and far from complex, trial. The jury had sent out several notes over the course of its deliberations, including one that appears to indicate that its discussions may have been particularly heated. Most important here is the

_____

737, 742 (CA 9, 1997); *Earnest v Dorsey*, 87 F3d 1123, 1129 (CA 10, 1996); *United States v Puleo*, 817 F2d 702, 705 (CA 11, 1987). In light of our determination that the mistrial declaration was manifestly necessary, we save for another day the issue of implied consent.

[16]See also *United States v Klein*, 582 F2d 186, 194 (CA 2, 1978):

> The appellant argues that a retrial is barred because of the failure of the trial court to make explicit findings that there were no reasonable alternatives to a mistrial . . . . *The short answer to this claim is the holding of* Arizona v Washington *that such findings are not constitutionally required.* [Emphasis supplied.]

See also *Hicks*, *supra,* 447 Mich 867 (Boyle, J., dissenting)("[t]he assumption that, as a matter of law, manifest necessity requires the exploration of less drastic alternatives to mistrial . . . ignores that the United States Supreme Court has specifically rejected [this] proposition").

18

fact that the jury foreperson expressly stated that the jury was not going to reach a verdict.[17]  We conclude that, in the absence of an objection by either party, the declaration of a mistrial in this case constituted a proper exercise of judicial discretion.  Accordingly, manifest necessity for the jury's discharge existed, and defendant's retrial did not constitute a constitutionally impermissible successive prosecution.

## C.  RESPONSE TO THE DISSENT

Our dissenting colleague opines that "the majority eviscerates established precedent requiring that trial judges exert reasonable efforts to avoid a mistrial." *Post* at 1.  We disagree.  In holding that double jeopardy considerations did not preclude defendant's retrial, we have merely set forth the unremarkable proposition that the failure of the jury to agree on a verdict is an instance of manifest necessity, allowing the trial court to declare a mistrial, discharge the jury, and retry the defendant.

Although the dissent ostensibly agrees that "no specific inquiry into alternatives to declaring a mistrial is required," *post* at 3, the dissent nevertheless points out that

---

[17]This Court long ago indicated that "the court is justified in accepting [the jury's] statement that [it] cannot agree as proper evidence in determining the question." *People v Parker*, 145 Mich 488, 502; 108 NW 999 (1906).  See also *United States v Cawley*, 630 F2d 1345, 1349 (CA 9, 1980) ("[t]he most critical factor is the jury's own statement that it is unable to reach a verdict").

19

the trial court did not poll the jurors, did not give a deadlocked jury instruction, and did not ask defense counsel for his thoughts. *Post* at 4. These, of course, would have been alternatives to declaring a mistrial. However, this Court has never required the trial court to explain why it chose to declare a mistrial on the basis of jury deadlock, rather than poll the jury, give a deadlocked jury instruction, or ask defense counsel for his thoughts. As we have explained above, the United States Supreme Court has specifically rejected such a requirement. See *Washington*, *supra,* 434 US 516-517:

> The absence of an explicit finding of "manifest necessity" appears to have been determinative for the District Court and may have been so for the Court of Appeals. If those courts regarded that omission as critical, they required too much. Since the record provides sufficient justification for the state-court ruling, the failure to explain that ruling more completely does not render it constitutionally defective.

Further, even the dissent in *Washington* recognized that, where the necessity for a mistrial is "manifest on the face of the record," the trial court does not have to make findings of necessity on the record to justify the declaration of a mistrial. *Id*. at 526.

In this case, the record provides sufficient justification for the trial court's declaration of a mistrial, and thus there was no need for the trial court to articulate a rationale on the record. The reasons were plain and obvious: the jury foreperson indicated that the jury was not

20

going to be able to reach a unanimous verdict.

## IV.   CONCLUSION

The trial court did not abuse its discretion in declaring a mistrial, in the absence of objection by either party, where the jury expressly indicated that it was deadlocked.  Accordingly, defendant's retrial did not violate the constitutional bar against successive prosecutions.  We therefore reverse the decision of the Court of Appeals and remand this matter to that Court for consideration of the additional issue that was raised by defendant, but not decided.  We do not retain jurisdiction.

CORRIGAN, C.J., and WEAVER, TAYLOR, and MARKMAN, JJ., concurred with YOUNG, J.

21

PEOPLE OF THE STATE OF MICHIGAN

    Plaintiff-Appellant,

v                                     No. 117041

REGINALD JOHN LETT,

    Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

    I disagree with the majority's conclusion that a manifest necessity required a mistrial.  In reaching its holding, the majority eviscerates established precedent requiring that trial judges exert reasonable efforts to avoid a mistrial.  Because I cannot agree that the prohibition against placing a defendant in double jeopardy evaporates simply because a defendant fails to object when a jury expresses discord, I respectfully dissent.

    It is not apparent from the record that it was manifestly necessary to declare a mistrial.  "Because of the high value placed on defendant's not being required to undergo the

discommodity of a second trial, the declaration of a mistrial should not be made lightly, even when it is made ostensibly for the protection of defendant." *People v Johnson,* 396 Mich 424, 438; 240 NW2d 729 (1976). As a "general rule, . . . trial judges must consider reasonable alternatives before declaring a mistrial." *People v Hicks,* 447 Mich 819, 841; 528 NW2d 136 (1994) (opinion of Griffin, J.).

> [I]n the absence of a motion by a defendant for a mistrial, "'the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. . . .'" [*People v Benton,* 402 Mich 47, 57; 260 NW2d 77, 81 (1977), quoting *United States v Dinitz,* 424 US 600; 96 S Ct 1075; 47 L Ed 2d 267 (1976).]

Contrary to the majority's assertions, this Court's precedent finds support in the guidance provided by the United States Supreme Court, which has affirmed that

> a constitutionally protected interest is inevitably affected by *any* mistrial decision. The trial judge, therefore, "must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." In order to ensure that this interest is adequately protected, reviewing courts have an obligation to satisfy themselves that, in the words of Mr. Justice Story, the trial judge exercised "sound discretion" in declaring a mistrial. [*Arizona v Washington,* 434 US 497, 514; 98 S Ct 824; 54 L Ed 2d 717 (1978) (citations omitted).] [Emphasis added.]

2

Thus, sound discretion requires a thoughtful, prudent analysis.

Even though no specific inquiry into alternatives to declaring a mistrial is required, such an inquiry would make clear the justification for retrial. Where no consideration of alternatives is evident, something else on the record must make clear the trial judge exercised "sound discretion" before declaring a mistrial. Unfortunately, no sound discretion was exercised here. Although this first-degree murder trial spanned a ten-day period, tried intermittently over six days, the deliberations lasted just over four hours.[1] The jury likely spent the first thirty-five minutes, late Thursday afternoon, doing little more than electing a foreperson. A few hours into the deliberations on Friday morning, the jurors sent a note to the judge that indicated concern over their voice levels during deliberation. Some time later, the jury sent another note that asked about the consequences if they failed to agree. On that basis, the trial judge ordered the jury into the courtroom at 12:45 p.m. and asked the foreperson whether the jury could reach a verdict. The foreperson responded, "no." The trial judge then immediately declared a mistrial, and by 12:48 p.m., the jury was excused. Never did

---

[1] Although it is not clear from the record when the jury reconvened June 13, 1997, I have assumed deliberations got under way at 9:00 a.m.

the trial judge consider alternatives or otherwise provide evidence that she exercised sound discretion.  For example, the judge did not poll the jurors, give an instruction ordering further deliberations, query defense counsel about his thoughts on continued deliberations, or indicate on the record why a mistrial declaration was necessary.

Though I acknowledge that a trial judge need not perform any explicit act to ensure a mistrial is manifestly necessary, there must be some indication on the record that such a grave act was required.  *Washington* at 516-517 (the record must provide "sufficient justification" of the manifest need for a mistrial).  In this case, where the jurors had been deliberating only a short time, where the note from the jurors merely questioned what might happen if they did not agree, where the judge-albeit in an attempt to properly keep the jurors' positions concealed-suppressed all comments by the foreperson that could have shed light on the need for a mistrial, and where the record as a whole fails to reveal that "the ends of public justice" would be served by the declaration of a mistrial, I cannot agree that subjecting defendant to a new trial was manifestly necessary. *Benton* at 57.

The majority makes special note of defendant's silence, observing that defense counsel did not object to the mistrial

4

declaration.  Ante at 20-21, n 15.  However, it was not necessary that defendant object at the very moment the mistrial had been declared, particularly because the jurors were simultaneously dismissed.  Though an objection on the record would have been helpful in determining defendant's position and in refreshing the judge concerning her duty to exercise sound discretion, defense counsel's failure to voice an objection cannot be considered evidence that a mistrial declaration was manifestly necessary.

The majority insinuates that defendant tried to have his cake and eat it too by failing to object to the mistrial declaration.  However, defendant gained nothing as a result of his counsel's failure to timely object.[2]  Either the trial judge properly declared a mistrial on the basis of manifest necessity, or she did not.  If she had, retrial would have been proper.  If not, defendant's right to be free from double jeopardy was violated by the second trial.  If defendant had succeeded in convincing a majority of this Court that the mistrial declaration was improper, he would gain nothing other

_____

[2] Defense counsel's failure to raise the double jeopardy issue any time before or during the second trial was not objectively reasonable.  No trial strategy could justify failing to object to the second trial. Defendant had nothing to gain by exposing himself to a second trial and, instead, lost the very thing the right was meant to protect: subjection to a trial in which the state had a second shot to get it right, i.e., to get a conviction.

5

than the lawful protection of his inherent constitutional rights. That the state was able to try defendant a second time and to secure a conviction cannot make an unconstitutional second trial retrospectively valid.

The new standard articulated by the majority negates any substance the manifest necessity inquiry might have. Though the majority may feel that trial judges can declare a mistrial on the most meager record without even a cursory attempt to assure that the public interest in such a declaration outweighs the defendant's clear interest in resolution by the first factfinder, this narrow interpretation of "sound discretion" must be rejected. The majority's conclusion ignores precedent from this Court and cursorily dismisses the mandate from the Supreme Court affirming the need for trial judges to exercise "sound discretion."[3]

In erroneously finding that manifest necessity required mistrial, the majority diminishes the constitutional rights of our citizens, specifically the right to be free from double

---

[3] The majority attempts to escape its duty to execute the Supreme Court's mandate, i.e., to assure the trial court exercised "sound discretion," by implying that I simply differ with the trial court's result. To clarify, I object not to the trial court's concern that the jurors held irreconcilable differences-in fact, I share that concern-but to its utter failure to make the pronouncement in a manner that evidences the exercise of "sound discretion." Because the judge did nothing more than act on a hunch with the most meager record for support, I cannot agree that "sound discretion" was exercised.

jeopardy. Even though defense counsel failed to timely object, causing defendant to suffer unnecessarily through a second trial, such an error does not excuse a violation of constitutional magnitude. Therefore, I would affirm the decision of the Court of Appeals.

KELLY, J., concurred with CAVANAGH, J.