# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

STEVEN CARL FULTZ,

      Defendant-Appellee.

UNPUBLISHED
June 19, 2018

No. 337279
Wayne Circuit Court
LC No. 16-004763-01-FH

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

JOHN ALEXANDER MCKEE,

      Defendant-Appellee.

No. 337284
Wayne Circuit Court
LC No. 16-004763-02-FH

Before: BECKERING, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

In these consolidated appeals,[1] the prosecution appeals as of right the order dismissing with prejudice the cases against defendants Steven Carl Fultz and John Alexander McKee. Defendants, who were Detroit police officers at the time of the underlying incident, were charged with misconduct in office, MCL 750.505, after it was alleged that they filed a false police report in connection with the arrest of Darreyl Coneal. The first trial against defendants ended with a mistrial due to a hung jury. Defendants were retried, and their second trial resulted in a mistrial after the trial court found that the prosecutor intentionally elicited improper testimony from a witness. In granting the second mistrial, the trial court dismissed the cases against defendants

---

[1] *People v Fultz*, order of the Court of Appeals, issued March 15, 2017 (Docket Nos. 337279, 337284).

-1-

with prejudice, thereby barring retrial. We affirm the trial court's grant of a mistrial, but vacate that part of the trial court's orders dismissing the cases against defendants with prejudice and remand for further proceedings.

On January 5, 2015, defendants, while on patrol, stopped a vehicle for disregarding a yield sign while traveling at a high rate of speed and "secured" its three occupants. In a police report filed after the stop, Fultz indicated that he observed the occupant in the vehicle's passenger seat throw "a brown balled up bag" from the window that "landed in the driveway of 19514 Hickory." Fultz's report stated that he and McKee returned to that address and recovered the bag, which contained two plastic bags of suspected heroin. McKee's police report filed after the stop indicated substantially the same sequence of events. On the basis of defendants' police reports, assistant prosecutor Sarah DeYoung proceeded with a case against Coneal, the vehicle's front-seat passenger. However, before the trial against Coneal began, DeYoung reviewed the videotape of defendants' scout car from the night of the stop and determined that statements made by defendants in the video conflicted with statements in their official reports. Based on the conflicting statements, DeYoung dismissed the case against Coneal. Defendants were eventually charged with misconduct in office.

Prior to the first trial, defendants moved to exclude evidence of DeYoung's dismissal of the Coneal case, arguing that the evidence was irrelevant and unfairly prejudicial. The original trial judge, Judge Michael Hathaway, denied the motion. But Judge Hathaway ruled that DeYoung's testimony would be limited, stating that "she can simply say I saw an insurmountable irreconcilability here in the evidence and I didn't think I could go forward" against Coneal and "[t]hat's it." Judge Hathaway also expressly precluded DeYoung from giving her opinion on whether defendants "falsified" their reports. The case was later reassigned to Judge Qiana Lillard, who continued this order. As stated, defendants' first trial ended with a hung jury.

At defendants' second trial, DeYoung was the prosecutor's first—and, as it turned out, only—witness. DeYoung testified that she was the lead attorney for the major drug unit and that the criminal case against Coneal was assigned to her in early 2015. According to DeYoung, she was confident that she could proceed against Coneal after reviewing defendants' reports of the stop; both reports indicated that the bag containing drugs was thrown from the front-passenger-seat window and Coneal was the front-seat passenger. DeYoung testified that her decision to proceed to trial against Coneal changed after she viewed the scout-car videotape from defendants' stop. In the video, DeYoung heard a voice she recognized as McKee's say that "we can't pin it on all three of them"; "some kind of reference to they must have thrown something"; and a "conversation where there was a statement being made that was I am thinking front passenger but it's up to you what do you think." According to DeYoung, "[A]t that point I did not believe I could go forward with trial" because of "what I was listening to." Following this statement, defense counsel objected and the parties approached the bench.

After the sidebar, the trial court overruled defense counsel's objection, and the following questioning between DeYoung and the prosecutor ensued:

> [*The prosecutor*]: Ms. DeYoung, why did you feel you could not go forward with this case?

[*DeYoung*]: Because I now had inconsistencies between what I was hearing in the audio and what I was reading in the police reports.

[*The prosecutor*]: How does that affect your ability as a prosecutor to go forward with the case?

[*DeYoung*]: I have a duty an ethical duty to only present evidence in good faith and I could not do that in this case.

At that point, counsel for Fultz objected, and the trial court ordered the jury to the jury room. Counsel for Fultz then explained that DeYoung's testimony that she had "an ethical duty" to dismiss the case against Coneal invaded the province of the jury and violated the court's prior order regarding the scope of DeYoung's testimony. Counsel for McKee joined in Fultz's objection, and both defendants moved for a mistrial, arguing that no instruction could cure the effect of the improper testimony.

The trial court found that DeYoung's testimony "clearly invade[d] the province of the jury" and that the prosecutor's questioning went well beyond the limitations the court had placed on DeYoung's testimony. The following exchange then occurred between the trial court and the prosecutor:

*Q*. Mr. DeFranco [the prosecutor] I don't mean to cut you off but I do because I need to have this question answered so are you suggesting to me that this was not just a misstep that Ms. DeYoung didn't just go a little to [sic] far but this is something that was planned to be introduced into [sic] order to address issues that were raised during the last trial?

*A*. Judge, I intended to ask Ms. DeYoung based on the based on the statements of Mr. Lee [Fultz's trial counsel] during his opening statement it was my intention to get that answer from Ms. DeYoung.

*Q*. Oh, motion for mistrial granted.

After granting the mistrial, the trial court explained that its decision was based on the prosecutor's "admission that this was a strategic decision to introduce this testimony from Ms. DeYoung" and the "fact that the prosecutor intentionally elicited the opinion of this assistant prosecuting attorney that she had an ethical obligation to dismiss this case." The trial court also found that DeYoung's testimony was "definitely far afield of the limitations placed upon the [P]eople by Judge Hathaway in his previous ruling" and created "a manifest necessity that a mistrial be declared." The trial court concluded that

because jeopardy has attached and this is clearly attributable to the actions of the prosecutor I mean strategic and intentionally [sic] decision to go forward in this course then you know I think I believe that as it stands the [P]eople will be barred from any effort to retry you in this case.

Thereafter, the trial court entered orders dismissing the charges against defendants with prejudice.

The first issue the prosecutor raises on appeal is whether the trial court erred by barring retrial. Whether retrial is barred is a question of law, which this Court reviews de novo. *People v Lett*, 466 Mich 206, 212; 644 NW2d 743 (2002). A trial court's factual findings "are subject to appellate review under the 'clearly erroneous' standard." *People v Dawson*, 431 Mich 234, 258; 427 NW2d 886 (1988). A finding is clearly erroneous "if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 498; 647 NW2d 480 (2002).

Double jeopardy principles protect a defendant from being tried twice for the same offense. *Dawson,* 431 Mich at 236. However,

> [r]etrials are an exception to the general double jeopardy bar. Where a mistrial results from apparently innocent or even negligent prosecutorial error . . . the public interest in allowing a retrial outweighs the double jeopardy bar. The balance tilts, however, where the judge finds, on the basis of the "objective facts and circumstances of the particular case," that the prosecutor intended to goad the defendant into moving for a mistrial. [*Id*. at 257 (footnotes omitted).]

In this case, the trial court explained that retrial was barred because the mistrial was caused by the prosecutor's intentional misconduct. However, this does not justify barring retrial; retrial is only barred if, based on the objective facts and circumstances, the trial court finds that "the prosecutor intended to goad defendant into moving for a mistrial." *Id*.[2] Therefore, the trial court's factual findings cannot support its legal conclusion that retrial is barred.

On appeal, defendants encourage us to conclude that, based on the record, it is clear that the prosecutor intended to goad defendants into moving for a mistrial, while the prosecution argues that the record clearly shows that the prosecutor had no such intent. As recognized by our Supreme Court, "[t]he 'goad the defendant into moving for a mistrial' standard 'calls for a finding of fact by the court . . ., an inquiry for which the trial court is best suited.' " *Id*. at 258 n

---

[2] The Michigan Supreme Court explained as follows:

> Where a defendant's motion for mistrial is prompted by intentional prosecutorial conduct . . . the defendant may not, by moving for a mistrial, have waived double jeopardy protection. The United States Supreme Court has held that the Double Jeopardy Clause bars retrial where prosecutorial conduct was intended to provoke the defendant into moving for a mistrial. *Oregon v Kennedy*, 456 US 667; 102 S Ct 2083; 72 L Ed 2d 416 (1982). [*Dawson*, 431 Mich at 253.]

In a footnote, the *Dawson* Court also quoted *Kennedy* for the proposition that " '[p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause.' " *Dawson*, 431 Mich at 257 n 56, quoting *Kennedy*, 456 US at 675-676. The Michigan Supreme Court in *Dawson* further stated that it saw "no need in the instant case to decide whether this Court should go further than the federal standard." *Dawson*, 431 Mich at 257.

-4-

57, quoting *United States v Posner*, 764 F2d 1535, 1539 (CA 11, 1985) (alteration in original). Therefore, we decline the parties' invitation to make this factual finding on appeal. Instead, we vacate that part of the trial court's order dismissing the case with prejudice and remand to the trial court for the factual determination of whether the prosecutor intended to goad defendants into moving for a mistrial.[3]

Next, the prosecution argues that the trial court erred by limiting DeYoung's testimony. We disagree. "A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Dixon-Bey*, 321 Mich App 490; 909 NW2d 458 (2017).

The trial court limited DeYoung's testimony based on MRE 403; the trial court ruled that DeYoung could explain that she could not proceed with trial against Coneal due to irreconcilable differences in the evidence, but "[t]hat's it." More specifically, the trial court ruled that the probative value of DeYoung's opinion whether defendants "falsified" their reports was substantially outweighed by that evidence's prejudicial effect. See MRE 403. The prosecution argues that, despite the fact that DeYoung's excluded testimony would have embraced an ultimate issue in the case—i.e., whether defendants acted with "corrupt intent" by intentionally putting false information into their police reports, see *People v Coutu*, 235 Mich App 695, 705-706; 599 NW2d 556 (1999) (discussing the elements of misconduct in office)—it was nonetheless admissible under MRE 704.[4] While we agree that the challenged testimony was not inadmissible under MRE 704, it is unclear how this establishes that the trial court abused its discretion by applying MRE 403. We see no reason to conclude that the trial court abused its discretion by limiting DeYoung's testimony under MRE 403, and because the prosecution has failed to offer any argument to the contrary, we conclude that the trial court's ruling was not erroneous.

The prosecution also argues that DeYoung's testimony that she had "an ethical duty" to dismiss the case against Coneal was admissible because defense counsel opened the door to this testimony by remarking during opening statements that DeYoung improperly dismissed the case. However, even if defense counsel's remarks invited a response from the prosecutor, this fact does not excuse the prosecutor's willful violation of the trial court's ruling regarding the parameters of DeYoung's testimony. As noted by the Michigan Supreme Court,

> The prosecution was not entitled to take the matter of balancing the equities into its own hands. A prosecutor has the responsibility of a minister of justice, not simply that of an advocate. [*People v Jones,* 468 Mich 345, 354, 357; 662 NW2d 376 (2003).]

---

[3] The trial court also found that a mistrial was warranted based on "manifest necessity," but "retrial is always permitted when the mistrial is occasioned by 'manifest necessity.'" *Lett,* 466 Mich at 215. Accordingly, this was not a ground to bar retrial.

[4] MRE 704 provides, "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

Where the parties and the court had discussed the limits of DeYoung's testimony several times throughout trial, the prosecutor was not entitled to violate the court's order solely because defense counsel "opened the door" to the testimony. See *id*. ("[T]he idea of invited response is not to be read as suggesting judicial approval of response-in-kind.").

The prosecution also argues on appeal that, for the same reasons that DeYoung's testimony was admissible, the trial court erred in granting defendants' motions for a mistrial. However, in making this argument, the prosecution does not address the basis for the trial court's grant of a mistrial: the prosecutor intentionally elicited testimony from DeYoung that violated the trial court's earlier ruling by limiting DeYoung's testimony. As stated, the trial court did not abuse its discretion limiting DeYoung's testimony under MRE 403. Without argument that DeYoung's testimony did not violate the trial court's limit on her testimony—or even argument that the prosecutor did not intend to elicit the improper testimony—the prosecution has not presented us with any error to review on appeal. And were we to address the propriety of the trial court's grant of a mistrial, we would conclude that the trial court did not abuse its discretion by granting a mistrial, *People v Hine,* 467 Mich 242, 250; 650 NW2d 659 (2002), given the facts that DeYoung was presented to the jury as an assistant prosecutor and the head of the major drug crimes unit, and the prosecutor admitted to intentionally eliciting testimony of DeYoung's "ethical duty" to not go forward with the case against Coneal, which was beyond the scope of DeYoung's permitted testimony.

Finally, the prosecution argues that this matter should be assigned to a different judge in the event of retrial. This Court "may remand to a different judge if the original judge would have difficulty in putting aside previously expressed views or findings, if reassignment is advisable to preserve the appearance of justice, and if reassignment would not entail excessive waste or duplication." *Bayati v Bayati*, 264 Mich App 595, 602–603; 691 NW2d 812 (2004). Because the prosecutor has not met these standards, we decline to remand to a different judge in the event of retrial.

Accordingly, we affirm the trial court's order granting a mistrial, but vacate that part of the trial court's orders dismissing these cases with prejudice and remand for further proceedings. On remand, the trial court should make a factual finding, based on the objective facts and circumstances of the case, whether the prosecutor intended to goad defendants into moving for a mistrial. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien