*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DWIGHT ANDREW JONES,

       Defendant-Appellant.

UNPUBLISHED
November 19, 2020

No. 349105
Wayne Circuit Court
LC No. 18-002173-01-FC

Before: GLEICHER, P.J., and K. F. KELLY and SHAPIRO, JJ.

PER CURIAM.

After his first trial ended with a hung jury, a second jury convicted defendant of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), for the sexual assault of his five-year-old daughter, SJ. Defendant contends that the trial court improperly declared a mistrial at his first trial and violated his right to be free from double jeopardy by conducting a second. He also challenges the sufficiency of the evidence supporting his convictions, the admission of his statement to the police, the court's denial of his second jury's request to rehear his testimony during deliberations, and the imposition of consecutive sentences for his convictions. We affirm defendant's convictions, but vacate defendant's sentences and remand for further sentencing consideration.

## I. BACKGROUND

SJ testified that her father sexually assaulted her two years earlier when she was five years old. She described that defendant called her into another room away from her siblings. He instructed SJ to remove her clothes and then removed his own clothes. SJ described that defendant then placed his penis into her vagina, answering in the affirmative that defendant "actually put [his penis] inside . . . your private area, . . . inside where you pee." SJ asserted that she bled from her vagina after. SJ further described that defendant put his penis inside her mouth and touched it against her butt. When SJ's mother knocked on the door, her father instructed her to get dressed.

SJ indicated that she immediately told her mother about the abuse. However, SJ's mother did not contact the authorities. Rather, at some unknown point, SJ's maternal grandmother contacted Child Protective Services. SJ underwent a medical examination, but the record does not

indicate how much time passed between the assault and the exam. It appears that the examining physician noted nothing out of the ordinary.

Defendant voluntarily came to the police station to speak with Officer Ernine Porter. Defendant denied that he had sexual intercourse with SJ. However, he claimed that he awoke one night and found SJ placing his penis in her mouth.

## II. DOUBLE JEOPARDY

Defendant's case proceeded to a jury trial in December 2018. The only witnesses at that trial were SJ and Officer Porter. The jury began deliberating at 11:20 a.m. on the second day of trial. The jury asked questions at 2:03 p.m. and 3:20 p.m., and was eventually excused for the afternoon. The following morning, the jury indicated that it had been unable to reach a unanimous verdict. At 10:50 a.m., the court instructed the jury consistent with M Crim JI 3.12 to "return to the jury room and resume your deliberations in the hope that after further discussion, you'll be able to reach a verdict." The court reminded the jurors to try to reach a decision "without violating" their individual judgments or giving up their "honest beliefs" and to "carefully and seriously consider the views of" the other jurors.

The jury submitted another note indicating that it was deadlocked at approximately 1:40 p.m. The court advised the attorneys that it intended to inquire "how long they've been deadlocked" and whether "any further deliberations would bear fruit." "That way . . . if there's a mistrial declared, at least there will be a record . . . ." Neither attorney had "[a]ny other thoughts" and the jury was brought back into the courtroom.

Upon questioning, the jurors stated in unison that they had not reached a verdict on either of defendant's CSC charges and had been deadlocked since the previous day. They believed that no unanimous verdict could be reached with further deliberation. The jury foreperson agreed that the jurors had "a fundamental difference of opinion such that a verdict cannot be reached." Accordingly, the court declared a mistrial. In doing so, the court did not first ask the attorneys' thoughts.

Defendant's second jury trial was conducted in March 2019. SJ and Officer Porter again testified. Agent Richard Buyse also testified that he was present during defendant's statement and corroborated Porter's version of events. And defendant took the stand. This time the jury convicted defendant as charged.

Defendant contends that the circuit court prematurely declared a mistrial absent manifest necessity. As the mistrial was declared in error, defendant contends that the second trial violated his right to be free from being twice placed in jeopardy for the same offense. Generally, we review de novo double jeopardy issues and review with "great deference" the "[n]ecessarily intertwined" issue whether the court properly granted a mistrial. *People v Lett*, 466 Mich 206, 212-213; 644 NW2d 743 (2002). However, defendant failed to preserve his challenge by objecting below and our review is limited to plain error affecting defendant's substantial rights. *People v Meshell*, 265 Mich App 616, 628; 696 NW2d 754 (2005).

Under both the federal and Michigan constitutions, a defendant may not be twice placed in jeopardy for the same offense. US Const, Ams V, XIV; Const 1963, art 1, § 15; *People v*

*Echavarria*, 233 Mich App 356, 362; 592 NW2d 737 (1999). Jeopardy attaches when a jury is empaneled. As such, "the Double Jeopardy Clause . . . protects an accused's interest in avoiding multiple prosecutions even where no determination of guilt or innocence has been made." *Lett*, 466 Mich at 215. However, it is well settled that a second trial is not precluded when a mistrial is declared based on "manifest necessity." *Id.* "Manifest necessity is not a precisely defined concept and must be determined case by case." *Echavarria*, 233 Mich App at 363. "The constitutional concept of manifest necessity does not require that a mistrial be ''necessary'' in the strictest sense of the word. Rather, what is required is a ''high degree'' of necessity." *Lett*, 466 Mich at 218. A jury's inability to reach a unanimous, impartial verdict, resulting in a deadlocked or hung jury is the "prototypical example" of manifest necessity to declare a mistrial. *Oregon v Kennedy*, 456 US 667, 672; 102 S Ct 2083; 72 L Ed 2d 416 (1982); *Lett*, 466 Mich at 217; *People v Ackah-Essien*, 311 Mich App 13, 31; 874 NW2d 172 (2015).

At defendant's first trial, the witnesses testified for only one hour and forty minutes. The jury deliberated for considerably longer, approximately seven hours. Jurors asked several questions. And yet, the jury could not reach a consensus. The jury first realized this predicament on the first day of deliberation. The jurors tried to push through the impasse and continued their deliberations before alerting the court. The jury deliberated for another two hours after the court read the deadlocked jury instruction. The jurors then informed the court that they could not reach a unanimous decision and would be unable to do so with additional deliberation. Only then did the court declare a mistrial. On this record, the trial court did not abuse its discretion in determining that a mistrial was manifestly necessary. As the trial court acted within its discretion in declaring a mistrial, it did not violate defendant's right to be free from double jeopardy by conducting a second trial. Accordingly, defendant is not entitled to relief.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant next contends that the prosecution presented insufficient evidence at the second trial that defendant sexually penetrated SJ, requiring reversal of his CSC-I convictions.

We review de novo a defendant's challenge to the sufficiency of the evidence, "view[ing] the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Carines*, 460 Mich at 758 (quotation marks and citation omitted). In making our assessment, we do "not interfere with the factfinder's role of determining the weight of the evidence and the credibility of witnesses." *People v Kosik*, 303 Mich App 146, 150; 841 NW2d 906 (2013). "It is for the trier of fact, rather than this Court, to determine what inferences can be fairly drawn from the evidence and to determine the weight to be afforded to the inferences." *Id*. at 150-151.

To convict a defendant of CSC-I under MCL 750.520b(1)(a), the prosecutor must establish that the defendant engaged in the sexual penetration of a person under the age of 13. MCL 750.520a(r) defines "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required."

The charges against defendant were based on SJ's description of penile-vaginal penetration and fellatio. At trial, SJ specifically described that defendant put his "wiener" or "dick" "inside" "where you pee" and that she bled afterward. She also specifically testified that defendant placed his penis "inside" her mouth. The victim's testimony, standing alone, was sufficient to support defendant's convictions. MCL 750.520h. And the jury credited the victim's testimony over defendant's bizarre claim that SJ initiated an act of fellatio. We may not interfere with the jury's assessment of the witnesses'' testimony.

## IV. THE *CORPUS DELICTI* RULE

Defendant argues that the admission of his police statement violated the *corpus delicti* rule because there was no evidence of sexual penetration independent of his statement. Because defendant did not object to the admission of his police statement on this basis below, our review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

The *corpus delicti* rule provides that a defendant's confession or other inculpatory statements cannot be used to convict him of a crime unless there's other proof that the offense actually occurred. It protects a defendant from being convicted of an offense that no one committed. See *People v Williams*, 422 Mich 381, 388; 373 NW2d 567 (1985). "Under the *corpus delicti* rule, a defendant's confession may not be admitted unless there is direct or circumstantial evidence independent of the confession establishing (1) the occurrence of the specific injury and (2) some criminal agency as the source of the injury." *People v Schumacher*, 276 Mich App 165, 180-181; 740 NW2d 534 (2007) (cleaned up). And the rule does not bar the admission of statements that are neither a confession nor an admission of some inculpatory fact. *Id.* at 181.

Defendant's police statement was not the only evidence of sexual penetration in this case. SJ's testimony sufficiently established that sexual penetration occurred. Accordingly, the admission of defendant's statement did not violate the *corpus delicti* rule. Further, because an objection to defendant's statement on this ground would have been futile, defendant's contention that his attorney was ineffective in failing to seek preclusion is without merit. See *People v Darden*, 230 Mich App 597, 605; 585 NW2d 27 (1998).

## V. JURY REQUEST TO REHEAR TESTIMONY

Defendant contends that during his retrial, the court improperly denied the jury's request to rehear defendant's testimony during deliberations. Again, defendant did not contemporaneously object and our review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.[1]

---

[1] At trial, defense counsel indicated that he did not object to the trial court's responsive instruction, but counsel did not affirmatively approve of the instruction. Therefore, we view this issue as merely forfeited, rather than waived. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000); *People v Jackson (On Reconsideration)*, 313 Mich App 409, 420; 884 NW2d 297 (2015).

After only a few hours of deliberations, the jury asked to rehear defendant's testimony. The trial court responded as follows:

> Um, we don't have the ability.
>
> As you can see, we have a busy courtroom and the court reporter can't, uh, you know, just very quickly, uh, provide you with a transcript, uh, from, uh, the recently held trial and so, um, if you really need it, it's gonna take days. So, what I would of [sic] suggest is you rely on your collective memory and your notes, um, as it relates to Mr. Jones' testimony.

The court provided the jury with other requested materials and the jury resumed its deliberations. Approximately two hours later, the jury reached a verdict.

MCR 2.513(P) provides:

> If, after beginning deliberation, the jury requests a review of certain testimony or evidence that has not been allowed into the jury room under subrule (O), the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may make a video or audio recording of witness testimony, or prepare an immediate transcript of such testimony, and such tape or transcript, or other testimony or evidence, may be made available to the jury for its consideration. The court may order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.

Pursuant to this court rule, a defendant does not have an absolute right for the jury to rehear testimony; that decision is left to the trial court's discretion. *People v Carter*, 462 Mich 206, 218; 612 NW2d 144 (2000). But if a jury requests to rehear testimony, a court cannot instruct the jury in a manner that precludes the possibility of later review of the testimony. *Id*. at 208.

The trial court properly instructed the jury to deliberate further without the requested testimony. Because the jury had been deliberating for only a short time when it made the request and a transcript was not immediately available, it was appropriate for the court to instruct the jury to rely on its collective memory and notes. Further, the court's instruction communicated that a transcript could be provided if the jury "really need[ed] it," but that it would take some days to prepare. As the court did not foreclose the possibility that the jury could obtain a transcript or rehear the testimony in the future, defendant is not entitled to relief. See *People v McDonald*, 293 Mich App 292, 297; 811 NW2d 507 (2011).

## VI. CONSECUTIVE SENTENCING

Finally, defendant challenges the trial court's imposition of consecutive 25-to-55-year sentences for his two CSC convictions.

In Michigan, concurrent sentencing is the norm, but consecutive sentences may be imposed if specifically authorized by statute. *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012).

MCL 750.520b(3) provides such authority in CSC-I cases: "[t]he court may order a term of imprisonment imposed under this section to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." We review for an abuse of discretion a court's decision to impose consecutive sentences that are authorized by statute. *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016). To allow for appellate review, a trial court exercising its discretion in this manner must "articulate on the record the reasons for each consecutive sentence imposed." *Id.* "[R]equiring trial courts to justify each consecutive sentence imposed will help ensure that the 'strong medicine' of consecutive sentences is reserved for those situations in which so drastic a deviation from the norm is justified." *Id*. at 655.

In *Norfleet*, 317 Mich App at 666, "the trial court spoke only in general terms, stating that it took into account defendants 'background, his history, [and] the nature of the offenses involved.' " Here, the trial court stated:

> All right. So, uh, I think this is a pretty egregious case. Uh, we have a situation where the defendant . . . sexually assaulted his five year old daughter not once, but twice, uh, arising out of the same incident. Uh, penetrated her in her mouth and vagina and has offered a defense, that's his right certainly, and I'm not going to hold that against him, uh, that this was all just a big misunderstanding and mistake, uh, leading to his conviction.
>
> I think the defense, uh - - I think the jury was right, defense, um, lacks credibility. And I don't think its reasonable to believe that a five year old girl, um, is going to engage in sexual conduct, uh, absent, um, it being forced upon her.
>
> And certainly I think she offered very credible testimony at the trial. Um, her testimony that she was taken out of a room, uh, with her siblings and, uh, forced to engage in sexual acts with her father, uh, certainly more credible than the story, uh, offered by the defense that somehow he was asleep, uh, in bed in a drunken state and that he was, uh, awaken to having his daughter's, uh, mouth on his penis.
>
> Uh, to say that I think that is absurd is an under statement [sic]. Um, and I think, you know, the verdict, uh, reflects, uh, the strength of [defendant's] defense and the absurdity of it.
>
> Uh, I think he is nothing less than a sexual predator. And understanding that, um, I'm gonna sentence him to 25 to 55 on Count 1, and 25 to 55 on Count 2. Count 2 is to run consecutive to Count I.

The court's reasons for imposing a consecutive sentence were nothing more than "general terms" that were insufficient to support its decision. The court described this as "a pretty egregious case," discussed the incredibility and absurdity of the defense theory, determined that the victim "offered very credible testimony," and deemed defendant "nothing less than a sexual predator." The court did not explain how this case involving a single incident of sexual assault was more egregious than other CSC-I cases, such as a case of prolonged abuse, or how defendant's acts made him more predatory than a defendant in a similar child sex abuse case. Moreover, conflicting testimony creating a credibility contest is common in many challenged criminal matters. On this

record, the trial court did not adequately support the imposition of a consecutive rather than a concurrent sentence and therefore, we cannot find that the court acted within its discretion. We must vacate defendant's sentences and remand for further consideration.

We affirm defendant's convictions, but vacate his sentences and remand for further consideration of his sentences. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Douglas B. Shapiro