*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 20, 2023

Plaintiff-Appellee,

v

No. 359837
Macomb Circuit Court
LC No. 2019-001800-FH

DEVANTE KYRAN JENNINGS,

Defendant-Appellant.

Before: RICK, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of carrying a concealed weapon, MCL 750.227. Defendant was sentenced to one to five years' imprisonment on the carrying a concealed weapon conviction. We affirm.

## I. BACKGROUND

In the early morning hours of April 30, 2019, a witness named Alexandria McCorkle heard a group of people getting into an argument outside her apartment complex in Clinton Township. She and her fiancé looked outside and saw a group of five men and one woman standing in the complex's parking lot. In what McCorkle believed was an attempt to get the group's attention, one of the men fired a gun into the air three times. Three of the men, including the shooter, then got into a white Dodge Charger and quickly drove away. McCorkle called 911 to report the incident. While on their way to speak with McCorkle, two police officers saw a Dodge Charger that matched the description McCorkle had given the 911 dispatcher and pulled it over. The officers discovered that defendant was driving the Charger and had two passengers with him in the car. There was a loaded handgun in the car's glove box, and the police later determined that the ammunition in the gun matched spent shell casings recovered from the apartment parking lot. None of the occupants of the vehicle had a concealed pistol license, and the handgun was not registered to defendant or anyone in Michigan.

Defendant was interviewed by police on the same day that the shooting occurred. During the interview, he admitted that he went to the apartment complex with the other two occupants of the Charger, that there was a disturbance at the apartment complex, and that he was the driver of

-1-

the Charger, which was registered in his and his father's names. The police then asked defendant if he would allow them to take a DNA swab to determine whether his DNA was on the handgun they had found in the glove box, but at that point, defendant ended the interview and refused to give a DNA sample.

Defendant was charged with carrying a concealed weapon, MCL 750.227.[1] His first jury trial ended in a mistrial because the prosecutor elicited testimony and presented argument concerning defendant's invocation of his right to silence. Specifically, in his closing argument, the prosecutor suggested to the jury that defendant exhibited a guilty conscience when he abruptly ended his police interview, stating:

> Now, during the officer's questioning, [defendant] admits that he was present for this disturbance and he had agreed to speak to the officers, he knew what it was about. He agreed to waive his Miranda rights, he said he understood everything, he didn't want an attorney, he—he was waving [sic] his right to remain silent at that point in time, but low [sic] and behold, after answering a few questions he says, no, I don't want to talk anymore. Why would he do that? Well, that shows a guilty conscience, like, well, okay, if I start going down this road further I am going to get into some territory that's not good for me. I am going to start making admissions that I know are going to put me in further trouble. Maybe if I keep my mouth shut at this point, I can kind of walk out of this.

Following the declaration of a mistrial, defense counsel argued that retrial may be barred by double jeopardy on the basis of prosecutorial misconduct. The prosecutor responded that double jeopardy did not attach unless it could be established that the prosecution intended to goad defendant into requesting a mistrial. The trial court agreed with the prosecutor, finding nothing in the record to suggest that he intended to cause the mistrial. Defendant was later retried, convicted, and sentenced as described earlier. This appeal followed.

## II. ANALYSIS

### A. DOUBLE JEOPARDY

Defendant first argues that his retrial was barred by double-jeopardy principles because the prosecutor intentionally goaded the defense into moving for a mistrial. We are required by existing precedent to disagree.

"A constitutional double jeopardy challenge presents a question of law that [is] review[ed] de novo." *People v Lett*, 466 Mich 206, 212; 644 NW2d 743 (2002). The trial court's factual findings regarding whether the prosecutor intended to goad the defense into moving for a mistrial are reviewed for clear error. *People v Dawson*, 431 Mich 234, 258; 427 NW2d 886 (1988). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is

---

[1] Defendant was also charged with altering marks of identity on a firearm, MCL 750.230, but the prosecutor agreed to dismiss the charge.

left with a definite and firm conviction that a mistake has been made." *People v Mullen*, 282 Mich App 14, 22; 762 NW2d 170 (2008) (quotation marks and citation omitted).

"Under both the Double Jeopardy Clause of the Michigan Constitution and its federal counterpart, an accused may not be 'twice put in jeopardy' for the same offense." *Lett*, 466 Mich at 213, citing US Const, Am V, and Const 1963, art 1, § 15. "The constitutional prohibition against multiple prosecutions arises from the concern that the prosecution should not be permitted repeated opportunities to obtain a conviction." *Lett*, 466 Mich at 214. "Jeopardy is said to 'attach' when a jury is selected and sworn, and the Double Jeopardy Clause therefore protects an accused's interest in avoiding multiple prosecutions even where no determination of guilt or innocence has been made." *Id*. at 215 (citations omitted).

If "a defendant requests or consents to a mistrial, retrial is not barred unless the prosecutor has engaged in conduct intended to provoke or 'goad' the mistrial request." *Id*. (citations omitted). "Additionally, retrial is always permitted when the mistrial is occasioned by 'manifest necessity.' " *Id*. (citations omitted). In *Oregon v Kennedy*, the United States Supreme Court ruled that "[p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on [the] defendant's motion, . . . does not bar retrial absent *intent* on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." 456 US 667, 675-676; 102 S Ct 2083; 72 L Ed 2d 416 (1982) (emphasis added). Therefore, when determining whether double jeopardy attaches, the central focus is on the intent of the prosecutor.

Michigan first had the opportunity to address *Kennedy* in *People v Dawson*, 154 Mich App 260, 273 (1986). But rather than apply the *Kennedy* test, this Court applied a different three-prong test, which was first set forth in *Pool v Superior Court*, 139 Ariz 98, 108-109; 677 P2d 261 (1984), which states that double jeopardy attaches where:

> 1. Mistrial is granted because of improper conduct or actions by the prosecutor; and
>
> 2. such conduct is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial or reversal; and
>
> 3. the conduct causes prejudice to the defendant which cannot be cured by means short of a mistrial. [*Id*.]

On appeal, our Supreme Court declined to adopt the *Pool* test because the appellate prosecutor conceded at oral argument that the trial prosecutor's conduct violated the federal *Kennedy* standard. *Dawson*, 431 Mich at 257. The *Dawson* Court reviewed the facts of the case, observing that "[t]he prosecutor's case was going badly" at trial, and that after several unfavorable trial developments, he began asking inappropriate questions of witnesses. *Id*. at 258-259. The Court further stated that the prosecutor knew that the questions were improper, and that when the defendant moved for a mistrial, the prosecutor "neither appeared surprised by nor argued against the mistrial motion." *Id*. at 259. And "[w]hen asked whether he had any response to defense counsel's request for a mistrial, the prosecutor responded, 'Nope.' " *Id*.

In analyzing whether double jeopardy barred retrial, the *Dawson* Court found that "[w]here a mistrial results from apparently innocent or even negligent prosecutorial error, or from factors beyond his control, the public interest in allowing a retrial outweighs the double jeopardy bar," but that "[t]he balance tilts . . . where the judge finds, on the basis of the objective facts and circumstances of the particular case, that the prosecutor intended to goad the defendant into moving for a mistrial." *Dawson*, 431 Mich at 257 (quotation marks and citation omitted). Citing *Kennedy*, the Court noted that the trial court's findings regarding a prosecutor's intent are of key importance, and noted that "[t]he 'goad the defendant into moving for a mistrial' standard 'calls for a finding of fact by the court . . . , an inquiry for which the trial court is best suited.' " *Dawson*, 431 Mich at 258 n 57, quoting *United States v Posner*, 724 F2d 1535, 15399 n 56 (CA 11, 1985). Ultimately, given the prosecutor's concession on appeal and the obvious errors made by the trial prosecutor, our Supreme Court held that the defendant's retrial was barred by double-jeopardy principles. *Id*. at 259.

The instant case differs from *Dawson* in several respects. Here, the prosecutor did not concede that he intended to cause a mistrial. To the contrary, the prosecutor stated that his statements were designed "to get the jury to find [defendant] guilty, not for a mistrial." At most, this evidences a concession of recklessness, not a specific intent to cause a mistrial. In response, the trial court ruled that nothing in the record suggested that the prosecutor engaged in conduct so egregious as to suggest an intent to bring about a mistrial. In *Dawson*, our Supreme Court declined to apply the *Pool* test, choosing to go no further than the *Kennedy* test. But regardless of which test is applied, the primary consideration in both is whether the prosecutor's actions evince an *intent* to cause a mistrial. And since we must rely in large part on the trial court's assessment of the prosecutor's behavior, we conclude that the trial court did not clearly err in finding that the prosecutor did not intend to goad the defense into requesting a mistrial. The objective facts presented here do not contradict the prosecutor's denial that he intended to provoke a mistrial, and the record indicates that the prosecutor's error was the result of recklessness, negligence, or a lack of skill rather than an intentional effort to goad the defense into requesting a mistrial in this relatively straight-forward case.[2] Accordingly, we find that double-jeopardy principles did not bar retrial.

---

[2] The dissent would find that the prosecutor's actions here were intentionally designed to cause a mistrial, and argues that this Court should adopt the *Pool* test, stating that it is the better test because it changes the applicable standard from specific intent to " 'intentional conduct which the prosecutor knows to be improper and prejudicial[.]' " *Dawson*, 154 Mich App at 272, quoting *Pool*, 139 Ariz at 108 (footnote omitted). But the fact remains that both tests require a showing of *intent*; even the *Pool* test requires the trial court to evaluate "what the prosecutor 'intends' and 'knows' by objective factors." *Pool*, 139 Ariz at 108 n 9. The dissent does not explain how we might find in favor of defendant under *Pool* here, where the prosecutor expressly stated that he did not intend to cause a mistrial, and the trial court believed him. As there is little evidence to support the conclusion that defendant could meet the *Kennedy* or *Pool* standards, we see no need to determine whether this Court should adopt one test over the other. We leave the question of whether objective intent should be the primary factor for determining whether double jeopardy attaches, or whether the courts should adopt a different test that would allow double jeopardy to

-4-

## B. WITNESS TESTIMONY

Defendant next argues that the trial court erred by admitting into evidence testimony from Clinton Township Police Detective Carl Simon that, according to defendant, opined on his guilt of the charged offense. Defendant further argues that his trial counsel was ineffective for failing to object to the admission of this testimony. Both of defendant's claims lack merit.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019), citing MRE 103(a)(1). Defendant concedes on appeal that he did not object to the testimony that is the subject of his argument. Therefore, the evidentiary issue is unpreserved, and this Court's review is for plain error affecting substantial defendant's rights. *Thorpe*, 504 Mich at 252, citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under this standard, defendant must show that an error occurred, that it was clear or obvious, and that it caused prejudice, i.e., that the error affected the outcome of the proceedings. *Carines*, 460 Mich at 763. Reversal is proper only if it can be shown that defendant is innocent or that the error seriously affected the fairness, integrity, or public reputation of the proceedings. *Thorpe*, 504 Mich at 252-253, citing *Carines*, 460 Mich at 763-764.

To preserve a claim of ineffective assistance of counsel, a defendant must raise the issue in a motion for a new trial or a *Ginther*[3] hearing filed in the trial court, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or in a motion to remand for a *Ginther* hearing filed in this Court, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant has not filed any such motions raising his ineffective-assistance claim, so the issue is unpreserved. "This Court reviews unpreserved claims of ineffective assistance of counsel for errors apparent on the record." *People v Spaulding*, 332 Mich App 638, 656; 957 NW2d 843 (2020). Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *Heft*, 299 Mich App at 80. Findings of fact are reviewed for clear error, and questions of law are reviewed de novo. *Id*.

It is a well-understood principle that a police officer "may not opine about the defendant's guilt or innocence in a criminal case." *Id*. at 81. Under MRE 701,

> [i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Thus, while an offer cannot make a bald assertion about a defendant's guilt, an officer can certainly give an opinion regarding the defendant's actions based on their personal experience, observations, and training, so long as the testimony is rationally based on perceptions made during an

---

attach where a prosecutor causes a mistrial by acting *unintentionally*, in the capable hands of our Supreme Court.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

investigation.  Under MRE 704, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

On direct examination, Detective Simon stated that he did not believe he could prove that defendant was the person who was in physical possession of the gun when shots were fired in the parking lot of the apartment complex.  Detective Simon then explained why he recommended that defendant be charged with carrying a concealed weapon:

> The charge of carrying a concealed weapon now is in control of the vehicle, use of vehicle and knowingly possessing that.  I reviewed reports and spoke with the witness indicating that they could hear a gunshot inside a building, knowing that there were 3 occupants reported getting back into the Charger, any one of the occupant[s] was the person with the gun.  I believed that [defendant] had knowledge that gun was in there.  It had been discharged in the parking lot, recovered shell casings that were consistent with what was found in the gun, in the gun that was recovered in [defendant's] car.  Based upon that that is the charge that I requested.

At most, Detective Simon testified about his investigation and his role in recommending charges to the prosecutor.  His testimony was based on reasonable inferences drawn from the facts of his investigation, and at no point did he definitively state that he believed defendant was guilty.  See *Heft*, 299 Mich App at 83 (concluding that police testimony did not address the defendant's guilt but instead merely "explain[ed] the steps of their investigations from their personal perceptions.").

But even if Detective Simon's testimony was improper, defendant cannot show that the error affected the outcome of the proceedings.  Initially, Detective Simon's belief that defendant knew the gun was in the vehicle was intrinsically implied from the nature of the proceedings, which would not excuse any impropriety, but would blunt any prejudice.  See *People v Lowrey*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 355364); slip op at 6-7 (stating that "we are not unmindful of the fact that [a police detective's] general disbelief of [the] defendant was intrinsically implied from the nature of the proceedings; although this does not excuse the impropriety, it does blunt any ensuing prejudice.").  But setting aside the allegedly tainted portion of Detective Simon's testimony, the evidence at trial supported a reasonable inference that defendant knew the gun was in the vehicle.  Defendant admitted that he went to the apartment complex with the other two occupants of the Charger and that there was a disturbance at the apartment complex.  Defendant was driving the Charger when it was pulled over by the police, and the gun was found in the glove box of the car.  Additionally, shell casings recovered from the parking lot of the apartment complex matched the ammunition found in the gun and magazine.  Thus, the evidence presented strongly indicated that defendant knew the gun was in the car.

Further, in its final jury instructions, the trial court strongly and repeatedly emphasized that the jurors were "the judges of the facts and the evidence" and that it was for them to decide whether they "believe[d] what each of the witness[es] said."  The court also explained to the jury that defendant is presumed innocent and that the prosecutor was required to prove each element of the charged offense beyond a reasonable doubt.  Finally, the court told the jury that they should not place undue significance on police testimony, stating that the testimony must "be judged by the same standard you use to evaluate the testimony of any other witness."  "It is well established that

jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Hence, even if Detective Simon's testimony was improper, the jury presumably followed the trial court's instructions that the jurors were the sole judges of the facts and that they were free to accept or reject any portion of any witness's testimony. Accordingly, defendant has failed to establish that any clear or obvious error in the admission of Detective Simon's testimony was outcome-determinative.

Defendant's claim of ineffective assistance of counsel is likewise unavailing. "To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (quotation marks, brackets, and citation omitted). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted). A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

As we have explained, Detective Simon's testimony was properly admitted at trial. Thus, defense counsel was not ineffective for failing to raise a futile objection. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). But even if Detective Simon's testimony improperly expressed an opinion on defendant's guilt or innocence, it was not apparent from the prosecutor's question that Detective Simon would express such an opinion. The prosecutor asked the following question immediately before the portion of Detective Simon's testimony that defendant challenges on appeal: "Okay. Now, so [defendant], just to be clear, [defendant] you didn't make recommendations for charges based on [defendant] possessing, physically possessing that weapon?" It was not clear from this question that Detective Simon would testify regarding his belief that defendant knew the gun was in the vehicle. Although it is clear in hindsight that the question led to the testimony that is being challenged on appeal, this Court cannot "use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 243; 749 NW2d 272 (2008). And defense counsel may have reasonably declined to object or request a curative instruction, to avoid drawing further attention to the allegedly improper testimony. See *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995) ("Certainly there are times when it is better not to object and draw attention to an improper comment."); *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013) ("Failing to request a particular jury instruction can be a matter of trial strategy.").

Further, even if defense counsel's performance fell below an objective standard of reasonableness, defendant cannot demonstrate a reasonable probability of a different outcome but for his counsel's failure to object or request a curative instruction. As explained earlier, the

evidence properly admitted at trial strongly supported the inference that defendant knew the gun was in the vehicle he was driving. Also, the jury was instructed that it was the sole judge of the facts, that it was free to accept or reject any portion of any witness's testimony, and that the testimony of police officers should be evaluated in the same way as that of any other witness. For all of these reasons, defendant's ineffective-assistance claim must fail.

## C. ANONYMOUS JURIES

Defendant's final argument on appeal is that the trial court empaneled an anonymous jury by referring to the jurors by number rather than by name, and that this violated his constitutional right to due process. We disagree.

To preserve a due-process challenge to the trial court's practice of referring to the jurors by number rather than by name, the defendant must object to the practice in the trial court. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). As defendant concedes on appeal, he did not raise an objection on this issue in the trial court. Therefore, the issue is unpreserved, and this Court's review is for plain error affecting defendant's substantial rights. *Id.*, citing *Carines*, 460 Mich at 763-764. Under this standard, defendant must show that an error occurred, that it was clear or obvious, and that it caused prejudice, i.e., that the error affected the outcome of the proceedings. *Carines*, 460 Mich at 763. Reversal is proper only if defendant can show that he is actually innocent or that the error seriously affected the fairness, integrity, or public reputation of the proceedings. *Id.* at 763-764.

In *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000), this Court rejected the defendant's argument that the trial court had violated his right to due process by impaneling an "anonymous jury," i.e., by referring to the jurors by number rather than by name. This Court stated that "[a]n 'anonymous jury' is one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *Id.* Although the use of an "anonymous jury" may protect the safety of jurors, there was also "a potential expense to two interests of the defendant: (1) the defendant's interest in being able to conduct a meaningful examination of the jury and (2) the defendant's interest in maintaining the presumption of innocence." *Id.* at 522-523. This Court held that, "[i]n order to successfully challenge the use of an 'anonymous jury,' the record must reflect that the parties have had information withheld from them, thus preventing meaningful voir dire, or that the presumption of innocence has been compromised." *Id.* at 523.

In *Williams*, this Court discerned no basis to conclude that an anonymous jury, in the "strict sense" of the term, was empaneled. *Id.* That is, the "jurors were merely referred to at trial by number rather than by name. There is nothing in the record to support the conclusion that any information was actually withheld from the parties. At most, the names of the jurors were replaced by numbers." *Id.* Hence, the jurors were not truly anonymous except in the literal sense that their names were not read into the record. *Id.* The defendant had access to the jurors' biographical information as contained in juror questionnaires, and the defendant's ability to effectively examine the venire was not compromised. *Id.* at 523-524. Nor was there any indication that the use of juror numbers undermined the presumption of innocence. *Id.* at 524. There was no basis to conclude "that jurors understood the use of numbers rather than names to be anything out of the ordinary. Thus, there was no suggestion that defendant's trial was being handled in a special way,

with the resulting implication that he was generally dangerous or guilty as charged." *Id*. This Court thus concluded that,

> under the facts of this case, defendant's due process rights were not violated by using juror numbers instead of names at trial. However, we caution the trial courts about the potential for prejudice arising from the use of anonymous juries. The procedure should be employed only when jurors' safety or freedom from undue harassment is, in fact, an issue, and, when used, appropriate safeguards should be carefully followed to assure a fair trial. [*Id*. at 525.]

In *Hanks*, this Court cited *Williams* for the proposition that "[a] challenge to an 'anonymous jury' will only succeed where the record reflects that withholding information precluded meaningful voir dire or that the defendant's presumption of innocence was compromised." *Hanks*, 276 Mich App at 93, citing *Williams*, 241 Mich App at 523. This Court in *Hanks* explained that *Williams* "opted for a strict definition of 'anonymous jury,' where something more than just the jurors' names is withheld from the parties." *Hanks*, 276 Mich App at 93. Applying the holding in *Williams*, this Court in *Hanks* reasoned:

> In this case, the record reflects that the jurors were identified by numbers. However, the record also demonstrates that the juror questionnaires containing biographical information were provided to the parties, and that both parties conducted extensive voir dire. There is no indication that any of the jurors believed that there was any significance in the use of numbers instead of names. Further, defendant failed to demonstrate that the use of numbers prevented him from conducting meaningful voir dire or that his presumption of innocence was compromised. We conclude that the jury in this case was anonymous only in a literal sense, so none of the dangers of an "anonymous jury" was implicated. Thus, defendant has not established that plain error affected his substantial rights. [*Id*. at 94 (citations omitted).]

The defendant in *Hanks* relied on cases from other jurisdictions to support his argument, but this Court stated that it was "bound by *Williams*" and was "not persuaded that *Williams* was wrongly decided." *Id*. at 95.

In the present case, defendant argues that he was denied due process because the trial court empaneled an anonymous jury by referring to the jurors by number rather than by name. His argument is unavailing under this Court's decisions in *Williams* and *Hanks*. As explained, "[a] challenge to an 'anonymous jury' will only succeed where the record reflects that withholding information precluded meaningful voir dire or that the defendant's presumption of innocence was compromised." *Hanks*, 276 Mich App at 93, citing *Williams*, 241 Mich App at 523. Although the trial court referred to the jurors by number rather than by name,[4] that by itself did not render the jury "anonymous" under the definition of that term adopted by this Court. *Hanks*, 276 Mich App at 93. The record contains no indication that any biographical information regarding the jurors

---

[4] Although the jurors were referred to by number rather than name on the record at trial, we note that the verdict form contains the signed name of the jury foreperson.

was withheld from the parties, and no basis exists to conclude that defendant was prevented from conducting an effective examination of the prospective jurors. Moreover, there is no indication that the presumption of innocence was compromised. The jurors were given no reason to believe that the use of numbers instead of names was of any significance. The jurors were instructed, both at the outset of jury selection and in the court's final instructions, that defendant was presumed innocent. "[J]urors are presumed to follow their instructions." *Graves*, 458 Mich at 486. Defendant has not established any plain error related to the trial court's reference to the jurors by number rather than by name.

Defendant acknowledges that the issue is unpreserved, that the plain-error standard applies, and that this Court's decisions in *Williams* and *Hanks* addressed this issue. Yet defendant does not argue that he can establish plain error under *Williams* and *Hanks*. Instead, defendant argues that this Court's caselaw is inadequate and that this Court should adopt a different test based on factors set forth in a number of lower federal court opinions. Defendant cites *United States v Thomas*, 757 F2d 1359, 1365 (CA 2, 1985), to support his position that, before impaneling an anonymous jury, a trial court must (1) find that there is a "strong reason to believe that the jury needs protection" and (2) ensure that "reasonable precaution [is] taken to minimize the effect that such a decision might have on the jurors' opinions of the defendants." Defendant further cites *United States v Ross*, 33 F3d 1507, 1520 (CA 11, 1994), for the proposition that the following factors should be used to determine whether a jury needs protection:

> (1) the defendant's involvement in organized crime, (2) the defendant's participation in a group with the capacity to harm jurors, (3) the defendant's past attempts to interfere with the judicial process, (4) the potential that, if convicted, the defendant will suffer a lengthy incarceration and substantial monetary penalties, and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment.

Defendant argues that Michigan's courts could adopt the test and factors set forth in *Thomas* and *Ross*, which he states would result in better trial court rulings on the matter, and improved appellate review of such decisions as well.

This Court is bound by *Williams* and *Hanks* because they are published opinions of this Court issued after November 1, 1990. See MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990 . . . ."); *Hanks*, 276 Mich App at 95 (noting that this Court is "bound by *Williams*"). Lower federal court decisions like those cited by defendant here "are not binding on this Court, but may be considered on the basis of their persuasive analysis." *People v Fomby*, 300 Mich App 46, 50 n 1; 831 NW2d 887 (2013). We do not find *Thomas* and *Ross* persuasive, and we can discern no reason to express disagreement with *Williams* and *Hanks* in order to invoke the procedure for convening a special panel under MCR 7.215(J). Again, it must be emphasized that by defendant's own concession, this issue is unpreserved and review is for plain error. Defendant fails to explain how a clear or obvious error could be found to exist on the basis of the nonbinding decisions of the lower federal courts. Ultimately, defendant has failed to establish

plain error under this Court's decisions in *Williams* and *Hanks*, and we decline to revisit or revise our jurisprudence on the use of anonymous juries.[5]

       Affirmed.

/s/ Michelle M. Rick
/s/ Anica Letica

---

[5] Defendant also argues that the erroneous impaneling of an anonymous jury should be considered a structural error that is not subject to harmless-error review. Again, however, defendant has not established that an error occurred under this Court's governing caselaw. It is thus unnecessary to consider whether such an error would be considered structural.